**H. L. FEDERMAN & CO., Plaintiff,**

v.

**Harold GREENBERG et al., Defendants.**

**No. 74 Civ. 1749.**

United States District Court, S. D. New York.

Dec. 4, 1975.

Aranow, Brodsky, Bohlinger, Benetar & Einhorn, New York City, for plaintiff.

Miller, Montgomery, Spalding & Sogi, New York City, for defendant Tokyo Boeki (U.S.A.), Inc.

PIERCE, District Judge.

## OPINION AND ORDER

On June 12, 1975, this Court granted the motion of defendant Tokyo Boeki (U.S.A.), Inc. to dismiss the complaint as to it pursuant to Rule 12(b) F.R.Civ.P. The Court wrote that "the complaint as it now reads does not set out any discernible claim against that entity and must be dismissed." However, plaintiff was granted leave to file an amended complaint. *H. L. Federman & Co. v. Greenberg,* 74 Civ. 1749 (S.D.N.Y. June 12, 1975). Plaintiff has filed an amended complaint and defendant Tokyo Boeki now moves to dismiss that complaint. For the reasons stated below, the motion is denied.

For purposes of this 12(b)(6) motion, the Court must treat the allegations of the complaint as true. See *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 353 F.Supp. 264 (S.D.N.Y.1972), aff'd, 495 F.2d 228 (2d Cir. 1974). Accordingly, the pertinent allegations of the complaint are summarized as follows.

Plaintiff brings this action derivatively, as a shareholder of defendant Florida Water and Utilities Co. ("Florida"), asserting that Florida, its directors, its subsidiary, United Steel and Strip Corp. ("United"), defendant Galvatron Industries Corp. ("Galvatron") and defendant Tokyo Boeki, singly and in concert, directly and indirectly, and aiding and abetting each other violated § 14(a) and § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j & 78n (1970)) and Rules 14a–5, 14a–9 and 10b–5 thereunder. Plaintiff alleges that defendants, through the means of a false and misleading proxy statement issued by Florida, fraudulently obtained shareholder approval of a sale of all the outstanding stock of United to defendant Greenberg, a Florida director, and further obtained approval of the termination of a proposed acquisition by Florida of Galvatron. The sale of United stock to Greenberg is alleged to violate Rule 10b–5. The proxy statement is said to violate Rules 14a–5 and 14a–9. Plaintiff asserts that these two transactions were vital segments of a larger scheme whereby certain defendants undertook to defraud Florida shareholders for their own pecuniary benefit. The complaint alleges sixteen specific deficiencies in the proxy statement.

According to the plaintiff, the scheme to defraud the best interests of Florida was as follows. In 1969, defendant Greenberg and certain other individual defendants were the owners of both United and Galvatron; at that time Greenberg was not connected with Florida. However, Florida then entered into a transaction whereby it acquired United and also acquired an option to acquire Galvatron at a later time in return for Florida shares. As a result of this 1969 transaction, Greenberg and his associates retained ownership of Galvatron and Greenberg received 20 percent of the outstanding shares of Florida and be-

came a director and the largest shareholder thereof.

Galvatron showed no earnings in 1970 and 1971; however, the option to acquire was extended by Florida in that Galvatron's future prospects were favorable.

In October 1973, United entered into an agreement with Tokyo Boeki. Tokyo Boeki is a subsidiary of a larger trading company which is engaged in the steel manufacturing business, as is United. Under the terms of the agreement, Tokyo Boeki was to transfer $1,300,000 to United in return for convertible subordinated notes of United due five years from the date of issuance, unless sooner converted or prepaid. The notes could not be prepaid by United until after January 31, 1975 but became convertible into 50% of the shares of United at Tokyo Boeki's option after January 1, 1975. In the event Tokyo Boeki elected to convert the notes, it would become, in effect, a co-owner of United with Greenberg in that the subsequent sale of United was approved by Florida's management and shareholders. Under the terms of the agreement with Tokyo Boeki, United warranted that it would pay $1,200,000 of the $1,300,000 to Florida by means of an upstream dividend. Plaintiff alleges that this upstream dividend was consideration to Florida for the sale of United.

According to plaintiff, the Tokyo Boeki transaction with United was subject to the approval of Florida's management, and that approval was obtained. However, plaintiff does not assert that the transaction was or should have been approved by the Florida shareholders. Nor is it asserted that the Tokyo Boeki transaction was expressly conditioned upon shareholder approval of the other transactions complained of. In no way does plaintiff assert that the Tokyo Boeki transaction was illegal.

However, plaintiff does assert that the Tokyo Boeki transaction provided United and Florida with the necessary funds to complete the following transactions which were approved by the Florida shareholders.

Those transactions are alleged to have been as follows. In December, 1973, Florida's management entered into a Plan of Separation and Agreement, subject to shareholder approval, whereby Greenberg would receive all outstanding shares of United in return for a transfer to Florida of 250,000 Florida shares then owned by Greenberg. As a consideration to Florida under the agreement, Florida's intra-corporate indebtedness to United was reduced by $95,000. Plaintiff asserts that the primary consideration was the $1,200,000 paid "upstream" to Florida. Plaintiff concludes that through this transaction Greenberg reacquired control of United by returning less than one-half the Florida stock he had received when he sold United to Florida in 1969. Further, plaintiff concludes that Greenberg retained control of Florida and remained its largest shareholder.

At the same time, Florida entered into another transaction with Greenberg and another defendant whereby Florida, subject to its shareholders' approval, would terminate its option to acquire Galvatron in return for 20,000 shares of Florida then owned by Galvatron shareholders. Plaintiff concludes that as a result of this transaction the Galvatron shareholders reacquired full rights to Galvatron by the return of less than one-half of the shares of Florida received by them in 1969 under the original Florida option to acquire Galvatron.

On or about December 13, 1973, Florida issued to its shareholders a proxy statement which asked them to approve the sale of United and the termination of the Galvatron option. On December 26, 1973, the shareholders approved these transactions, and the transactions were consummated the following day. Among the more pertinent allegations as to the proxy statement, it is asserted that the document misleadingly described the transaction with Tokyo Boeki as a "loan". Plaintiff asserts that this transaction should have been described as the sale of an option to purchase stock. Further, it is charged that the proxy

statement failed to disclose that Tokyo Boeki is not a conventional commercial lender but is in fact a subsidiary of a larger corporation which is engaged in the steel business and which is United's largest supplier of steel. Plaintiff also charges that the proxy statement made various other false and misleading statements regarding the true financial condition of United and Galvatron, the true nature of the challenged transactions, the personal benefits flowing to the individual defendants as a result of the transactions, and the financial impact of these transactions upon Florida.

As against Tokyo Boeki, plaintiff asserts that Tokyo Boeki knew that the funds it provided to United were to be used in completing the challenged sale of United to Greenberg. Plaintiff asserts that Tokyo Boeki had received a copy of the agreement entered into between Greenberg and Florida regarding United and that Tokyo Boeki had full knowledge of the contents of the proxy statement and the actual facts of the transactions described therein and was fully aware of the false and misleading statements therein. Plaintiff charges that Tokyo Boeki knew that the proxy statement misleadingly described its transaction with United as a "loan" and that it gave the misimpression that Tokyo Boeki was a conventional lending institution. Plaintiff asserts that Tokyo Boeki was aware of the failure of the proxy statement to reveal the true financial condition of United and Galvatron, and that it knew of the personal benefits flowing to Greenberg and others of the defendants as a result of the three transactions. Plaintiff alleges that Toyko Boeki knew that its participation in the transactions was vital to the success of the larger scheme. Finally, plaintiff's complaint asserts that Tokyo Boeki "aided and abetted, participated in and substantially assisted in the fraud which is described herein and in the resultant looting of Florida of its valuable subsidiaries United and Galvatron."

## Discussion

In that this is a motion to dismiss, it is clear that the pertinent question is whether the complaint sets forth a claim upon which relief can be granted on the issue of whether Tokyo Boeki aided and abetted the alleged violations of 14a–9 and 10b–5. If the complaint does not allege aiding and abetting, it cannot be said to allege primary liability. (See *infra*.) If, on the other hand, aiding and abetting is properly alleged, then the motion to dismiss must be denied. Accordingly, the Court proceeds to evaluate the charges against Tokyo Boeki in terms of aiding and abetting alone.

■ It is not asserted by the plaintiff that Tokyo Boeki owed any specific duty to the Florida shareholders by nature of its relation to them. Indeed, the movant is not a director, accountant, or attorney of Florida, nor is it a subsidiary or parent of Florida. It is not alleged that Tokyo Boeki is involved in the internal affairs of Florida in any way. The class of persons who may be primarily liable under § 14(a) of the Exchange Act and Rule 14a–9 is a narrow one, because in proxy transactions only the shareholders are of the specific class protected by the proxy law. See *Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281, 1300–01 (2d Cir. 1973). However, secondary liability under § 14(a) may be found as to non-soliciting board members, *Chris Craft Indus. v. Indep. Stock Com.,* 354 F.Supp. 895 (D.Del.1973) and as to lawyers, *SEC v. Nat. Student Marketing Corp.,* 360 F.Supp. 284 (D.D.C.1973). Tokyo Boeki cannot be said to be a person "responsible for the preparation of the statement" as is an inside director or controlling shareholder. See *Gerstle, supra,* at 1300–01. Tokyo Boeki asserts that it cannot be held to a standard of conduct stricter than that set down in *Lanza v. Drexel,* 479 F.2d 1277 (2d Cir. 1973) (*en banc*), where the Second Circuit refused to place an affirmative duty of disclosure upon an "outside" director who was

not involved in the negotiations by the issuer. *Id.* at 1289.

■ An affirmative duty of disclosure has been imposed upon accountants, see *Hochfelder v. Ernst & Ernst,* 503 F.2d 1100 (7th Cir. 1974), *cert. granted,* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 773 (1974), upon directors who participate in the challenged transaction, see *Lanza v. Drexel, supra,* at 1289, upon lawyers who write opinion letters, *SEC v. Spectrum, Ltd.,* 489 F.2d 535 (2d Cir. 1973), and upon others, such as lead underwriters, who are intimately engaged with the issuer of financial documents that must pass the scrutiny of the securities laws. See *Chris Craft Industries v. Piper Aircraft Corp.,* 480 F.2d 341 (2d Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). Under the securities laws, the duty to disclose is statutory, or has been derived from statutory obligations. See generally Ruder, *Factors Determining the Degree of Culpability Necessary for Violation of the Federal Securities Laws in Information Transmission Cases,* 32 Wash. & Lee L.Rev. 571, 587–90 (1975).

■ Among those who do not owe any affirmative duty to disclose are those whose relationship to the issuer and to the plaintiff is more remote. See *White v. Abrams,* 495 F.2d 724, 735–36 (9th Cir. 1974). However, liability for aiding and abetting may be imposed upon brokers, see *Landy v. FDIC,* 486 F.2d 139 (3d Cir. 1973), upon banks, see *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975); *Rosen v. Dick* [Current Binder] CCH Fed.Sec.L.Rep. ¶ 94,786 (S.D.N.Y. Sept. 3, 1974), and even upon consultants to the issuer, *Brown v. Senex Corp.* [Current Binder] CCH Fed.Sec.L.Rep. ¶ 95,-338 (E.D.Ky. August 27, 1975). Such liability is not dependent upon any affirmative duty to disclose. *Rosen v. Dick, supra,* at 96,604. Rather, aiding and abetting liability may be present as a result of the defendant's substantial assistance and participation in the wrongdoing.

While the exact definition of aiding and abetting is not a settled question of law, see *Lowenschuss v. Kane,* 520 F.2d 255, 268 n. 10 (2d Cir. 1975), it is clear that the test set forth in *SEC v. Coffey,* 493 F.2d 1304 (6th Cir. 1974) has gained substantial support in other Circuits, including the Second. In *Coffey,* the court wrote as follows:

"Aiding and abetting has been defined by courts considering securities law cases with reference to both the Restatement of Torts § 876 (1939), and the criminal law . . . .. Without meaning to set forth an inflexible definition of aiding and abetting, we find that a person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation." (*Id.* at 1316 (citations omitted).)

■ Similar definitions of aiding and abetting have been adopted by the Fifth Circuit in *Woodward, supra,* and by the Third Circuit in *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 891 (3d Cir. 1975), citing *Landy v. FDIC, supra.* While the Second Circuit has but referred to this post-*Coffey* discussion of the applicable definition, there are indications that the *Coffey* test would meet with approval; see *Lowenschuss v. Kane,* 520 F.2d 255, 268 n. 10 (2d Cir. 1975) (discussing § 14(e)). In this Court's judgment, the present standard in this Circuit was described by Judge Metzner in *Rosen v. Dick, supra.*

"Secondary liability under the federal securities laws may be imposed if a person has actual knowledge of another's improper scheme plus an intent to further that scheme (i. e., *scienter*), and he has given substantial assistance to the primary wrongdoer." (*Rosen v. Dick, supra,* at 96,604.)

This test is substantially in accord with *Coffey* and emphasizes the elements of *scienter* and "substantial assist-

ance" required by the Second Circuit in *Lanza v. Drexel, supra,* and restated in *Lowenschuss, supra.* Accordingly, the Court will apply the test described in *Coffey* and *Rosen.*

Plaintiff must first allege an independent wrong. Here such a wrong has been set forth; the allegations regarding the actions of Greenberg, Florida, United, and the other individual defendants could, if proven, give rise to primary liability under Rule 14a-9 for the issuance of the proxy statement. Further, if it was proven that the proxy statement was a false or misleading statement issued in connection with the sale of United stock to Greenberg, then primary liability could lie under Rule 10b-5. Thus, for the purposes of this motion, the Court can conclude that the complaint states an independent wrong.

Plaintiff has alleged in abundance facts going towards the knowledge element of the test. It is alleged that Tokyo Boeki knew the details of the United and the Galvatron transactions, and knew how its own transaction with United fit into the overall plan. It is alleged that Tokyo Boeki knew of the misleading statements in the proxy material, including the statements which described its transaction as a "loan" and which gave an impression that Tokyo Boeki was a commercial lender. In that Tokyo Boeki allegedly stood to benefit from the series of transactions, and in that its funds were employed to achieve those transactions, plaintiff has made sufficient allegations to satisfy the *scienter* requirement. See *Rosen v. Dick, supra,* at 96,604. While actual knowledge of the securities law violations involved must be proved by reliable evidence, see *SEC v. Coffey, supra,* at 1317; *Lanza v. Drexel, supra,* at 1301–02, at this juncture it cannot be doubted that plaintiff

has alleged actual knowledge. *Scienter* is also alleged in the manner in which *Lanza v. Drexel* employed that term. See 479 F.2d at 1301 (intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud). If in fact Tokyo Boeki allowed its transaction with United to be described simply as a "loan" and if in fact it allowed the proxy statement to describe it as a commercial lender, and to conceal the true nature of the transactions, then at the very least a reckless disregard for the truth is present. See *Chris Craft, supra,* 480 F.2d at 363; *id.* at 393 (Gurfein, J., concurring), quoted in *Lowenschuss, supra,* 520 F.2d at 268 n. 10.

The final element which plaintiff must allege is that of "substantial assistance." Plaintiff has employed this very term in its complaint, and the series of negotiations and the transfer of the $1,300,000 to United by Tokyo Boeki allege a substantial involvement by the movant in the overall plan. Further, the Court notes plaintiff's claim that Tokyo Boeki stood to gain substantially from the total plan and the challenged transactions in that it obtained the option to purchase one-half of United. Plaintiff has clearly asserted that Tokyo Boeki played an integral part in the overall transaction whereby both United and Galvatron moved from the control of Florida to the control of Greenberg and the other individual defendants, and possibly to the control of Tokyo Boeki.[1]

The nature of the assistance rendered by the alleged aider-abettor relates back to the knowledge element, particularly in a situation such as here where Tokyo Boeki had no independent duty to disclose. See *Woodward, supra,* 522 F.2d 84. In that case the Fifth Circuit wrote as follows:

---

1. While this case involves an allegation of a failure of disclosure on the part of other defendants, the Court does not consider this to be a situation where Tokyo Boeki may have incurred liability for "inaction" alone. Because of Tokyo Boeki's unique relationship to the transactions, the standard here imposed is not the same as that which might be imposed

upon a commercial lender which took no equity interest. Here it could be found that Tokyo Boeki was embarked upon a joint venture with Greenberg to acquire United; and thus, that the movant was closely involved with the sale of United by Florida. Compare, *Rosen v. Dick, supra,* at 96,604. See note 2 *infra.*

"In a case combining silence/inaction with affirmative assistance, the degree of knowledge required should depend upon how ordinary the assisting activity is in the business involved. If the evidence shows no more than transactions constituting the daily grist of the mill, we would be loath to find 10b–5 liability without clear proof of intent to violate the securities laws. Conversely, if the method or the transaction is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability." (*Woodward, supra,* 522 F.2d at 97).

In this case the plaintiff has alleged a transaction which cannot possibly be considered one in the everyday course of Toyko Boeki's business.[2] Further, actual knowledge clearly is alleged. Tokyo Boeki stood at the beginning and at the end of the three transactions. Accordingly, it is possible to conclude that Tokyo Boeki had a substantial interest in the shareholders' approval of the United sale, for that sale allegedly allowed it to enjoy the option of converting United notes into shares.

■ The Court concludes that plaintiff has alleged an independent wrong in the claimed deficiencies of the proxy statement, that plaintiff has alleged sufficient knowledge and actions on the part of Tokyo Boeki so as to constitute an allegation of *scienter,* and that plaintiff has alleged that, through its funding and other actions, Tokyo Boeki afforded substantial assistance to those alleged to be primary wrongdoers. Treating all the allegations of the complaint as true, plaintiff has stated a claim of aiding and abetting under the securities laws, and that claim can withstand a motion to dismiss. *Brown v. Senex Corp., supra; Rosen v. Dick, supra.*

---

2. The Ninth Circuit has proposed a flexible duty standard to judge a defendant's responsibilities under aiding and abetting standards. See *White v. Abrams,* 495 F.2d 724, 734 (9th Cir. 1974). While this approach may be inconsonant with the Second Circuit's emphasis on

Accordingly, the motion of defendant Tokyo Boeki to dismiss the complaint as to it pursuant to Rule 12(b) Fed.R.Civ.P. is denied.

So ordered.

*scienter,* this Court may properly assess the relationship of the defendant to the issuer in evaluating the knowledge element. See *Lanza v. Drexel, supra,* at 1301–07; Ruder, *supra,* at 576 et seq.