David and Dorothy STEINBERG, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

William Polk CAREY, John L. Gibbons, Robert M. Morgan, William S. Renchard, Fred R. Sullivan, James R. Webb, Peter C. R. Huang, James V. Tomai, Jr., C. I. Realty Investors, City Investing Company, C. I. Planning Corporation, Reynolds Securities Inc. and duPont Glore Forgan Incorporated, Defendants.

No. 75 Civil 1695.

United States District Court, S. D. New York.

Nov. 3, 1977.

Richard D. Greenfield, Sterling H. Schoen, Jr., Philip Stephen Fuoco, Bala Cynwyd, Pa., Rembar, Wolf & Curtis, New York City, for plaintiffs.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants William Polk Carey, William S. Renchard, Fred R. Sullivan and James R. Webb; Kurt Koegler, Gage Andretta, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants C. I. Realty Investors, City Investing Co., C. I. Planning Corp., Peter C. R. Huang, James V. Tomai, Jr., John L. Gibbons; S. Hazard Gillespie, Mark L. Austrian, James L. Kerr, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants Reynolds Securities Inc. and duPont Glore Forgan Inc.; Hugh N. Fryer, Weaver H. Gaines, Jr., M. Pat Adamski, John J. Langhauser, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

C. I. Realty Investors ("CIRI" or the "Trust") is a real estate investment trust organized under Massachusetts law for the purpose of investing as an equity owner and as a long term mortgage lender with equity participations in income producing proper-

ties such as apartment buildings, shopping centers, office buildings, industrial parks, warehouses and hotels. CIRI made its only public offering on April 13, 1972 pursuant to a prospectus and registration statement which became effective that day and continued for a ninety-day period. In all, 2,600,000 units were sold (each unit consisting of one share of beneficial interest and one warrant to purchase one share for $25) at a price of $25 per unit. Upon the public sale of the securities, CIRI realized approximately $65,000,000, which was available and used for its investment purposes.

Plaintiffs, representing a class defined as all purchasers of CIRI securities between April 13, 1972 and July 12, 1972 (the ninety-day effective period), allege, as set forth hereafter, that the prospectus contained certain untrue statements of material fact and omitted to state others, in violation of section 10(b) of the Securities Exchange Act of 1934[1] and Rule 10b–5[2] promulgated thereunder, and that plaintiffs were damaged thereby. Among other things, the amended complaint alleges a conspiracy among all the defendants with respect to the claimed omissions and misrepresentations in the prospectus.

In addition to CIRI, the corporate defendants include: (a) the CIRI related entities, City Investing Corporation ("City"), which allegedly controlled CIRI and indirectly wholly owned co-defendant C. I. Planning Corporation ("Planning"), CIRI's investment advisor pursuant to written agreement, and (b) the underwriter's representatives, duPont Glore Forgan, Incorporated ("duPont"), and Reynolds Securities, Inc. Individual defendants are the officers and trustees of CIRI, some of whom were also officers or directors of City or Planning, and others referred to as the "outside" trustees, who had no other relationship to CIRI or its related companies or affiliates.

The matter is now before the Court on a motion by the outside trustees, William Polk Carey, William S. Renchard, Fred R. Sullivan and James S. Webb, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there is no genuine issue as to a material fact relating to their intent to deceive plaintiffs and therefore as a matter of law plaintiffs' cause of action is insufficient. The motion is made after plaintiffs have had extensive discovery by way of oral depositions, voluminous interrogatories and document discovery: more than sixty witnesses have been deposed, thousands of pages of testimony have been transcribed, and many thousands of documents have been produced for inspection.

At the time of the CIRI offering, Carey was employed by defendant duPont as its Director of Corporate Finance. He served on CIRI's Board of Trustees in part as duPont's representative and was coordinator of the offering on behalf of duPont, which participated in analyzing CIRI and in verifying the statements made in the prospectus. He also participated in negotiating CIRI's advisory agreement with Planning. Renchard's only contact with the Trust was as trustee; he was, at the time of the offering, Chairman of Chemical Bank's board and a director of several public companies. Sullivan, also only a trustee, was and is Chairman of the Board and President of Walter Kidde & Co., and also served as a director of several public companies. Webb was similarly a director of a number of companies as well as being Vice President-Finance, a director and member of the executive committee of F. W. Woolworth Co., in addition to his CIRI trusteeship. Each of the outside trustees affirms that prior to accepting the offer to become a CIRI trustee, he satisfied himself as to those persons and entities connected with CIRI (e. g., management, counsel, accountants, etc.), and that the personnel appeared competent and in no way prompted suspicion or gave reason to believe that any of their duties would not be discharged as required by law.

The prime focus of attention is a meeting held on April 3, 1972, at which the outside trustees were formally elected and during which they and the other trustees, among

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240.10b–5.

other things, discussed and approved a draft prospectus which, with minor changes, became the effective prospectus about which plaintiffs' claims center. The lengthy prospectus in its opening pages contains a warning that the securities were subject to a number of "risk factors" described in a section by that name; attention is also directed to possible conflicts of interest among CIRI, Planning and City. Other sections describe "benefits to founders," CIRI's general investment policies, the management and transactions with related parties, the agreement between CIRI and its advisor, Planning, and a summary of the Declaration of Trust. One other section describes the Trust's proposed initial investments and includes audited financial statements concerning the properties in which CIRI proposed to invest.

Plaintiffs contend, however, that the outside trustees did not legitimately perform their duties relative to the prospectus and other matters at the April 3, 1972 meeting, the only one attended by them prior to the Trust's public offering. Thus, in resisting this motion for summary judgment, plaintiffs urge that issues of fact exist as to whether the outside trustees' membership on the Board of Trustees was a sham and whether that fact was disclosed in the prospectus; whether they, as members of the board, considered or adequately considered the initial investments referred to in the prospectus; whether the risk of leveraging was adequately disclosed; whether the outside trustees made any reasonable effort to investigate the Trust's initial equity investments or their manager, Multicon Properties, Inc.; whether defendant Carey had actual knowledge that an inadequate investigation had been made; and whether defendants adequately disclosed the risks inherent in holding Government National Mortgage Association ("GNMA") securities.[3]

The basic material facts are not in dispute. The April 3, 1972 meeting was ad-

mittedly not a long one—it lasted several hours—and an agenda of thirty-one items—including the prospectus and all its contents—was covered in that time. While some of these items (e. g., changing the Trust's name, approval of the form of corporate seal) are without much import, others (e. g., approval of the Planning/CIRI advisory agreement, approval of the SEC registration statement, approval of the initial investments and their description in the prospectus) are of considerably more substance. From the duration of the meeting, plaintiffs conclude that no meaningful discussions by the trustees could have taken place within that time, infer that the Board of Trustees was a "sham" and a "rubber stamp for management," and accordingly claim a Rule 10b–5 violation because this was not disclosed in the prospectus. The moving defendants argue that the duration of the meeting is irrelevant; that questions were asked by the trustees concerning those matters contained in the draft prospectus (a copy of which each trustee had received prior to the meeting) which in their judgment warranted questions. For purposes of this motion only these outside trustees do not dispute plaintiffs' claim that the CIRI prospectus contained material misrepresentations and omissions, but swear that at no time prior to the dissemination of the prospectus or during the ninety-day period when it was effective did they have any knowledge of any of the alleged misrepresentations or omissions nor were they apprised of any facts which should have put them on notice with respect thereto. They argue that they properly and in good faith relied upon CIRI's management and counsel, Davis Polk and Wardwell, for the preparation, accuracy and completeness of the prospectus and upon the certified public accountants, Peat, Marwick, Mitchell & Co.; Haskins and Sells; Lybrand, Ross Bros. & Montgomery and Ernst & Ernst, for the accuracy and completeness of the financial statements included therein, and that there is no evidence, direct or circumstantial, of

---

3. Plaintiffs failed to file a statement as required by Rule 9(g) of the Local Rules, but the above contentions as to the existence of alleged disputed material issues are set forth in an affidavit submitted by one of plaintiffs' attorneys.

intentional wrongdoing by the moving defendants. Moreover, these defendants argue that there is neither evidence of knowledge by them of any wrongdoing by other defendants nor, given their justifiable reliance upon CIRI's management and supporting entities, did they have any reason to suspect same; nor was any conduct of the other defendants of such a flagrant nature as to raise suspicion where there otherwise was none.

■■■ The Court is, of course, well aware that a defendant's categorical denials of wrongdoing do not mandate a grant of summary judgment.[4] Also, it is recognized that conspiracies are rarely established by direct proof; usually they are spelled out by independent circumstantial evidence and the reasonable inferences to be drawn therefrom.[5] Moreover, although no inference of state of mind may be drawn from the mere fact of a false statement—which for purposes of this motion is not disputed—one may not deliberately close his eyes to facts he had a duty to see.[6] Any inference, however, to be drawn by a fact-finder must be based on common experience and be logical or reasonable.[7]

Plaintiffs make no claim of direct evidence against the outside trustees of wrongful conduct. Indeed they have argued that these trustees were "duped" by the other trustees.[8] However, to establish the requisite scienter element[9] of their 10b–5 claim against the moving defendants, plaintiffs rely upon the duration of the April 3, 1972 meeting and the number of matters of substance passed upon at that meeting by the trustees in general and the moving defendants in particular. From these facts plaintiffs urge that an inference may be drawn that the outside trustees acted in a reckless manner and consequently with intent to deceive, which plaintiffs contend presents a fact issue foreclosing the granting of the instant motion. Thus plaintiffs press hard upon the fact that one of the thirty-one items considered and passed upon by the trustees was thirty-two separate investments involving millions of dollars and argue that it was not possible to adequately evaluate those initial investments at a two-hour meeting which required consideration of other matters of importance. As stated by plaintiffs' counsel: "The only conclusion that one can reach is that no careful consideration was given these investments by the trustees . . . .. It may be permissible for an outside trustee to rely on a detailed, reasonable presentation, but that simply could not have happened in the time alotted [sic] to the organizational meeting." In sum, the argument proceeds that such reckless or indifferent conduct permits the inference of scienter—intent to deceive, manipulate or defraud.

■■■ In *Ernst & Ernst v. Hochfelder*,[10] the Supreme Court made clear that negligence—even "inexcusable negligence"—is insufficient to satisfy the scienter element

---

4. *Miller v. Schweickart,* 413 F.Supp. 1062, 1065 (S.D.N.Y.1976); *cf. Ferguson v. Omnimedia, Inc.,* 469 F.2d 194, 198 (1st Cir. 1972).

5. *Miller v. Schweickart,* 413 F.Supp. 1062, 1065 (S.D.N.Y.1976); *cf. United States v. Kahaner,* 203 F.Supp. 78, 84 (S.D.N.Y.1962); *Morgan v. Sylvester,* 125 F.Supp. 380, 389 (S.D.N.Y.1954), *aff'd,* 220 F.2d 758 (2d Cir.), *cert. denied,* 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955).

6. *United States v. Benjamin,* 328 F.2d 854, 861, 863 (2d Cir. 1964).

7. *NLRB v. Gleason,* 534 F.2d 466, 474 (2d Cir. 1976); *Miller v. Schweickart,* 413 F.Supp. 1062, 1065 & n.10 (S.D.N.Y.1976).

8. What they [the outside trustees] did was lend their names, titles and many years of business experience to avaricious men who did not hesitate to use those names to deceive the investing public. These honorable men, as discovery has revealed, were duped by the CI defendants into voting upon business and investment matters involving more than $200 million with no more than token information provided to them.
Affidavit of Richard Greenfield, plaintiffs' attorney.

9. *See, e. g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

10. 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 688 (1976).

of a Rule 10b–5 claim.[11] The Court, however, expressly left open the question of whether, "in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5."[12] Prior to *Hochfelder,* our Court of Appeals had long held that recklessness was sufficient to establish scienter;[13] absent any contrary directive post-*Hochfelder,* that standard is still binding on this Court.[14] Moreover, the Court notes the virtual unanimity of the cases considering the question since *Hochfelder* that reckless conduct meets the scienter standard in a Rule 10b–5 claim.[15] Thus, if the facts herein can reasonably be said to support an inference of recklessness, the motion would have to be denied.

Exactly what conduct is covered by the term "recklessness" does not lend itself to ready or easy definition.[16] It has been suggested that in light of *Hochfelder,* the "definition of 'reckless behavior' should not be a liberal one lest any discerning distinction between 'scienter' and 'negligence' be obliterated for these purposes."[17] Were this a close question, the issue of whether *Hochfelder* requires a more stringent standard of what constitutes recklessness than that heretofore applied in this Circuit might have to be determined. Under the facts of

11. *Id.* at 190 n.5, 193, 96 S.Ct. 1375.

12. *Id.* at 193–94 n.12, 96 S.Ct. at 1381.

13. *Lowenschuss v. Kane,* 520 F.2d 255, 268 n. 10 (2d Cir. 1975); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 363–64, 396–99 (2d Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973) (en banc); *Cohen v. Franchard Corp.,* 478 F.2d 115, 123 (2d Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1096 & n. 15 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir. 1971); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 868 (2d Cir. 1968) (en banc) (Friendly, J., concurring), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

14. *Poloron Prod., Inc. v. Lybrand Ross Bros. & Montgomery,* 72 F.R.D. 556, 559 n.1 (S.D.N.Y. 1976).

15. *E. g., Wright v. The Heizer Corp.,* 560 F.2d 236 (7th Cir. 1977); *Sanders v. John Nuveen & Co.,* 554 F.2d 790 (7th Cir. 1977); *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1043–45 (7th Cir. 1977), *cert. denied* —— U.S. ——, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Bailey v. Meister Brau, Inc.,* 535 F.2d 982 (7th Cir. 1976); *Franke v. Midwestern Okl. Dev. Auth.,* 428 F.Supp. 719 (D.Okl.1976); *Coleco Indus., Inc. v. Berman,* 423 F.Supp. 275 (E.D. Pa.1976); *McLean v. Alexander,* 420 F.Supp. 1057 (D.Del.1976); *Katz v. Realty Equities Corp.,* 406 F.Supp. 802 (S.D.N.Y.1976); *see SEC v. Bausch & Lomb, Inc.,* 420 F.Supp. 1226 (S.D.N.Y.), *aff'd,* 565 F.2d 8, No. 76–6189 (2d Cir. Sept. 30, 1977). *See generally* Bucklo, *The Supreme Court Attempts to Define Scienter Under Rule 10b–5: Ernst & Ernst v. Hochfelder,* 29 Stan.L.Rev. 213 (1977) (suggesting that the Supreme Court will find recklessness sufficient scienter in a Rule 10b–5 claim).

16. *See Lowenschuss v. Kane,* 520 F.2d 255, 268 n.10 (2d Cir. 1975); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 393 (2d Cir.) (Gurfein, J., concurring), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973) ("I do not think a litmus paper test of scienter will ever be found.") This may account for the variety of recklessness formulae proposed since *Hochfelder. E. g., Franke v. Midwestern Okl. Dev. Auth.,* 428 F.Supp. 719, 725 (D.Okl. 1976) (reckless conduct "an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it"); *Sanders v. John Nuveen & Co.,* 554 F.2d 790 (7th Cir. 1977) (recklessness "closer to being a lesser form of intent than merely a greater degree of ordinary negligence . . . not just a difference in degree but also in kind"); *Coleco Indus., Inc. v. Berman,* 423 F.Supp. 275, 296 (E.D.Pa.1976) (misrepresentation must result from "conscious deception or [be] so recklessly made that the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception"). The *Franke* formulation has been adopted by the Seventh Circuit. *Sanders, supra; Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1045 (7th Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). *See* note 19 *infra.*

17. *Sanders v. John Nuveen & Co.,* 554 F.2d 790 (7th Cir. 1977); *see Coleco Indus., Inc. v. Berman,* 423 F.Supp. 275 (E.D.Pa.1976) (reckless culpability must approach that of conscious deception); *cf. SEC v. Bausch & Lomb, Inc.,* 420 F.Supp. 1226 (S.D.N.Y.1976), *aff'd on other grounds,* 565 F.2d 8, No. 76–6189 (2d Cir. Sept. 30, 1977) (SEC must prove recklessness, not merely negligence, in 10b–5 action after *Hochfelder* ).

this case, however, whatever the proper standard, recklessness cannot reasonably be inferred with respect to at least three of these moving defendants.

Under facts somewhat similar to these, the Second Circuit in *Lanza v. Drexel & Co.*,[18] held that proof of a wilful or reckless disregard for the truth is necessary to establish liability under Rule 10b–5 and stated that:

> In determining [what] constitutes "willful or reckless disregard for the truth" the inquiry normally will be to determine whether the defendants knew the material facts misstated or omitted, or failed or refused, after being put on notice of a possible material failure of disclosure, to apprise themselves of the facts where they could have done so without any extraordinary effort. *Chris Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 363–64, 396–99 (2d Cir. 1973). The answer to the inquiry will of course depend upon the circumstances of the particular case, including the nature and duties of the corporate positions held by the defendants.[19]

Making this determination, the *Lanza* Court affirmed the district court's dismissal of the action as against an outside—meaning non-managerial—director of the defendant corporation. The director was not a participant in the preparation of the information which was found to contain serious misstatements and omissions. The Court held that directors have a right to rely on the officers of the corporation to perform their functions in a lawful manner.[20] There being no circumstances therein to put the director on notice that misleading information was being conveyed to stock purchasers, the director was not liable under Rule 10b–5. The Court concluded that:

> a director in his capacity as a director (a non-participant in the transaction) owes no duty to insure that all material, adverse information is conveyed to prospective purchasers of the stock of the corporation on whose board he sits. *A director's liability to prospective purchasers under Rule 10b–5 can thus only be secondary, such as that of an aider and abettor, a conspirator, or a substantial participant in fraud perpetrated by others.*[21]

Thus, to the extent that the moving defendants herein were nonparticipants in the preparation of the prospectus in which the alleged misrepresentations are made, their liability can only be secondary.

■ While it is clear that knowing assistance of or participation in a fraudulent scheme gives rise to liability under section 10(b) as an aider and abettor,[22] the requisite scienter is not present where a defendant entertains a reasonable belief that all the facts have been disclosed.[23] Although the question of whether inaction can or cannot give rise to secondary liability under Rule 10b–5 is still open in this Circuit,[24] "[k]now-

---

18. 479 F.2d 1277 (2d Cir. 1973) (en banc).

19. *Id.* at 1306 n. 98. A substantially similar formulation was applied in *Cohen v. Franchard Corp.,* 478 F.2d 115, 123 (2d Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973). Other recklessness standards, apparently more stringent, have also been applied in this Circuit, raising the question of whether any modification of this Circuit's standard post-*Hochfelder* is in fact necessary. *See, e. g., Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 378 F.Supp. 112, 126 (S.D.N.Y.1974), *aff'd in relevant part,* 540 F.2d 27 (2d Cir. 1976) ("willful, deliberate or reckless disregard for truth that is the equivalent of knowledge"); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 868 (2d Cir. 1968) (en banc) (Friendly, J., concurring), *cert. denied,* 394 U.S. 976, 89 S.Ct.

1454, 22 L.Ed.2d 756 (1969) ("the kind of recklessness that is equivalent to wilful fraud").

20. 479 F.2d at 1306.

21. *Id.* at 1289 (emphasis added).

22. *Hirsch v. duPont,* 553 F.2d 750, 759 (2d Cir. 1977); *Kerbs v. Fall River Indus., Inc.,* 502 F.2d 731 (10th Cir. 1974); *see Katz v. Realty Equities Corp.,* 406 F.Supp. 802 (S.D.N.Y.1976); *H. L. Federman & Co. v. Greenberg,* 405 F.Supp. 1332 (S.D.N.Y.1975).

23. *Hirsch v. duPont,* 553 F.2d 750, 759 (2d Cir. 1977).

24. *Id. Compare Wessel v. Buhler,* 437 F.2d 279 (9th Cir. 1971) *and Hirsch v. duPont,* 396 F.Supp. 1214 (S.D.N.Y.1975), *aff'd on other*

ledge of the fraud, and not merely the undisclosed material facts, is indispensable"[25] to liability and the concept of aider and abettor liability cannot "be stretched to encompass the situation where there is in fact no active participation . . . ."[26]

■ Under this standard, there can be no doubt as to the propriety of summary judgment in favor of defendants Renchard, Webb and Sullivan. They had no hand in the preparation or verification of the prospectus. Each defendant has testified in deposition and affirms that prior to becoming a CIRI trustee, he knew of the standing of CIRI's legal counsel, management, personnel and affiliated and supporting entities, and was satisfied as to their competence, integrity and forthrightness. Renchard and Webb received and read the preliminary prospectus prior to the April 3, 1972 meeting, asked questions at that meeting and based upon the answers elicited and the advice of counsel and those who in fact prepared the document, were satisfied that the prospectus was accurate and complete and that the initial investments described therein were proper. Although Sullivan was not present at that meeting, he too received the prospectus, questioned others with respect to those who prepared it and was generally satisfied with the responses. Neither an inference that defendants were on notice of a possible material failure of disclosure nor one that these three defendants were aware of any fraud on the part of the other defendants can be drawn from the approval of the prospectus at the April 3 meeting. These defendants, not being insurers of the accuracy or completeness of the statements therein, were entitled to rely on the efforts of management and counsel and had no duty to go any further than they did.[27] As the *Lanza* Court observed:

> Consider for a moment the practical aspects: Should [the director] have said: "Hold up all further proceedings. Disregard the closing date. I must personally examine all participants in this transaction . . . as to all things said and done with respect to the [sale and issuance] and no vote on my part can be made until I satisfy myself that all fig-

grounds, 553 F.2d 750 (2d Cir. 1977) (affirmative act required) *with Fischer v. New York Stock Exchange,* 408 F.Supp. 745 (S.D.N.Y. 1976) *and Brennan v. Midwestern United Life Ins. Co.,* 259 F.Supp. 673 (N.D.Ind.1966), 286 F.Supp. 702 (N.D.Ind.1968), *aff'd,* 417 F.2d 147 (7th Cir. 1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970) (inaction sufficient).

25. *Murphy v. McDonnell & Co.,* 553 F.2d 292, 295 (2d Cir. 1977); *Hirsch v. duPont,* 553 F.2d 750, 759 (2d Cir. 1977).

26. *Murphy v. McDonnell & Co.,* 553 F.2d 292, 295 (2d Cir. 1977).

27. As part of their effort to head off summary judgment for these defendants, the plaintiffs argue that these defendants were knowledgeable about leveraging and its effect on the Trust's assets. As they allege in the complaint that the prospectus failed to adequately disclose the risks of leveraging, plaintiffs contend that the failure of these defendants to ensure that adequate disclosure on this topic was made supports an inference that these defendants acted recklessly.

Under the prospectus section entitled "Risk Factors," there appears the following paragraph:

> *Leveraging.* The Trust will seek to increase the yield on investments by leveraging. Such borrowings increase commensurately the Trust's risk of loss because they represent a prior claim on the Trust's assets and require fixed payments of interest and amortization of principal regardless of profitability. In order to meet such obligations, the Trust may be required to liquidate investments, which may have an adverse effect on its operations.

This paragraph was prepared by, among others, counsel and CIRI management, or as defendant Renchard put it in a deposition, "highly specialized people." Despite plaintiff's repeated assertions to the contrary, these defendants were entitled to rely on those who prepared the statement to ensure that the above was a sufficient statement on the subject. Whether in fact this was materially sufficient is a matter to be resolved at trial with respect to the remaining defendants. The fact that these defendants approved this statement, however, cannot support any inference, reasonable or otherwise, that the defendants acted recklessly. *See Franke v. Midwestern Okl. Dev. Auth.,* 428 F.Supp. 719 (D.Okl.1976).

ures and representations are accurate."[28] . . . [I]f this were [that director's] duty, so was it the duty of all directors to quiz all participants as to their knowledge; establishing such a duty would create an intolerable situation.[29]

With respect to the defendant Carey, however, the situation is somewhat different. Although he has testified that details in the prospectus were prepared and verified by others upon whom he relied, his activities were more extensive. He admittedly participated in the negotiation of CIRI's advisory agreement with Planning, discussed matters included in the prospectus with those at duPont performing the analysis, and was coordinator of the offering on behalf of duPont which participated in analyzing CIRI and in verifying the accuracy and completeness of the statements contained in the prospectus. Even without plaintiffs' allegations concerning Carey's additional involvement with the offering which, to say the least, raise factual issues concerning the degree of his participation and consequent knowledge or awareness of any material misstatements, the depth of even his admitted participation is such as to preclude a grant of summary judgment under the standards described above.[30]

The Court is well aware of the stringent requirements to be met before summary judgment can be granted—its sole function at this juncture is not to resolve material issues of fact but only to determine whether they exist;[31] and all ambiguities and questionable inferences must be resolved in favor of the party against whom summary judgment is sought. Rule 56, however, is not a dead letter.[32] Unsupported allegations may be disregarded and summary judgment is appropriate absent genuine issues about a material fact. Discovery is over. As already noted, plaintiffs have taken the deposition of each individual defendant and numerous other witnesses, with transcript pages running into the thousands. Yet there has been no suggestion that other evidence exists to support this claim, evidence which would permit an inference of scienter based upon a reasonable factual foundation. Plaintiffs' position is based upon conjecture, surmise and speculation. They have presented no fact or circumstance upon this record that warrants the inference that the outside trustees, in accepting and relying upon the advice and judgment of counsel with respect to the prospectus and agreements and upon the financial reports of certified public accountants, acted with reckless indifference to or in callous disregard of their duties as such trustees. In the absence of such proof there is no basis upon which a factual finding may be made of intent to deceive, manipulate or defraud. Under the circumstances, defendants are entitled to be discharged from bearing the heavy burden and expense of what will admittedly be a protracted trial.[33] Moreover, the Supreme Court has observed:

**28.** Plaintiffs suggest that this is just what defendants should have done to avoid the current charges against them. Thus they chide these outside trustees because they were unaware of the tenancy turnover in some of the proposed investment properties that were listed in the prospectus and considered at the meeting.

**29.** 479 F.2d at 1307.

**30.** See Lanza v. Drexel & Co., 479 F.2d 1277, 1302 (2d Cir. 1973) (en banc); United States v. Koenig, 388 F.Supp. 670, 712 (S.D.N.Y.1974) ("The Second Circuit [in Lanza] clearly recognized . . . that knowing and substantial participation in such dissemination by an outside director would subject him to the same duty as any other participant.").

**31.** See, e. g., FLLI Moretti Cereali S.p.A. v. Continental Grain Co., 563 F.2d 563 (2d Cir. 1977); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317 (2d Cir. 1975).

**32.** See United States v. Matheson, 532 F.2d 809, 813 (2d Cir. 1976); Miller v. Schweickart, 413 F.Supp. 1062, 1068 (S.D.N.Y.1976). See also Williams v. McAllister Bros., Inc., 534 F.2d 19, 21 (2d Cir. 1976).

**33.** Miller v. Schweickart, 413 F.Supp. 1062, 1069 (S.D.N.Y.1976); cf. Schwartz v. Broadcast Music, Inc., 180 F.Supp. 322, 325 (S.D.N.Y. 1959); Morgan v. Sylvester, 125 F.Supp. 380, 389 (S.D.N.Y.1954), aff'd, 220 F.2d 758 (2d Cir.), cert. denied, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955).

There has been widespread recognition that litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general. . . .

. . . . .

The first of these concerns is that in the field of federal securities laws governing disclosure of information even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial *so long as he may prevent the suit from being resolved against him by dismissal or summary judgment.*[34]

This Court, of course, expresses no view on the merits of plaintiffs' claims against the remaining defendants. It holds only that plaintiffs, on this record, have no claim against defendants Renchard, Webb and Sullivan, and their motion for summary judgment is accordingly granted. As to defendant Carey, however, the motion is denied.

---

34. *Blue Chip Stamps v. Manor Drugstores,* 421 U.S. 723, 739, 740, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975) (emphasis added).