**Richard SHEMTOB et al., Plaintiffs-Appellants,**

v.

**SHEARSON, HAMMILL & CO., Inc., Defendant-Appellee.**

**No. 1063, Docket 71-1504.**

United States Court of Appeals, Second Circuit.

Argued June 29, 1971.

Decided Aug. 31, 1971.

Robert V. Ferrari, New York City (Gerwin & Ehrenclou and Richard L. Weingarten, New York City, on the brief), for defendant-appellee.

Reginald Leo Duff, New York City (Carro, Spanbock & Londin, New York City, on the brief), for plaintiffs-appellants.

Before MOORE, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Plaintiffs ("the Shemtobs") appeal from an order of the district court for the Southern District of New York, Palmieri, J., denying their motion for a stay of arbitration, 28 U.S.C. § 2283, and dismissing the complaint for failure to state a claim upon which relief can be granted, Rule 12(b) (6), F.R.C.P. We affirm.

The essential allegations of the complaint are as follows: On February 4, 1969, the Shemtobs consolidated three separate securities accounts with the defendant Shearson, Hammill & Co., Inc. ("Shearson") into a single account in which plaintiffs were tenants in common. The agreement pursuant to which the account was opened provided in part as follows:

"5. I will maintain such margin as you in your discretion may require from time to time and will pay on demand any debit balance owing with respect to any of my accounts. You may, in the event of my death or whenever in your discretion you consider it necessary for your protection, sell any or all property held in any of my accounts, cancel any open orders for the purchase or sale of any property with or without notice to me, and you may borrow or buy in any property required to make delivery against any sale effected for me. Such sale or purchase may be public or private and may be made without advertising or notice to me * * *.

"11. Your failure to insist at any time upon strict compliance with this agreement * * * shall in no event constitute or be considered a waiver by you of any of your rights or privileges * * *."

The Shemtobs concentrated, in their stock purchases, on the common stock of Asamera Oil Corporation Ltd. ("Asamera"), a volatile security traded on the American Stock Exchange. On January 2, 1970, 13,800 shares of Asamera constituted the sole holding in the Shemtob account. Then Asamera began a steady

decline until, on April 23, 1970, the value of the collateral in the Shemtob account was inadequate to secure the Shemtobs' debt to Shearson under the 30% margin requirement established by the February 4, 1969, agreement.

The complaint continues to allege that on April 28, 1970, Shearson wrote a letter to the Shemtobs demanding $13,833.00 in additional collateral to bring the account back into margin.[1] The letter was followed by a telegram on May 1 reiterating the demand for additional margin and stating that the account would be liquidated on May 4 if additional collateral were not forthcoming.[2] In response to the telegram Richard Shemtob allegedly telephoned Shearson's representative and stated that he fully intended to "ride the market down." He suggested that Shearson apply the 25% margin requirement of the American Stock Exchange in lieu of the 30% requirement imposed by his margin agreement and requested that Shearson not liquidate his account without giving him a margin call and an opportunity to provide additional collateral. The Shearson representative allegedly agreed to this purported oral modification or novation of the written agreement, and in reliance upon the modification Richard Shemtob instructed another brokerage house to deliver an additional 1,000 shares of Asamera to the Shemtob account at Shearson. At the time this additional collateral was sufficient to bring the account into compliance with either margin requirement, but physical transfer of the stock was delayed through no fault of the Shemtobs, and when the stock did arrive at Shearson on May 13, 1970, it was insufficient to satisfy either margin requirement, due to a continuing decline in the market price of Asamera.

The Shemtobs' account remained under-margined from May 13 to May 22,

1970, when it was liquidated by Shearson without warning to the Shemtobs. On May 22, the price of Asamera had fallen so low that Shearson claimed a post-liquidation debt of $16,340.00.

On September 21, 1970, Shearson commenced a proceeding in Supreme Court, New York County, seeking pursuant to the February 4, 1969, margin agreement to compel arbitration of Shearson's claim of $16,340.00 allegedly owed it by the Shemtobs. On November 23, 1970, the Shemtobs filed this federal action alleging violations of § 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, seeking rescission of the liquidation sale, damages, and a stay of arbitration.

The application of § 10(b) and its subsidiary rule in situations not involving the classic buyer-seller relationship is not unprecedented, see SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 858 (2d Cir. 1968); A. T. Brod Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967); Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D.Cal.1968); Lorenz v. Watson, 258 F.Supp. 724, 732 (E.D.Pa.1966), and we have jurisdiction under that section if the allegations of the complaint indicate that it has been properly invoked. In resolving this question we are not unmindful that the Federal Rules of Civil Procedure do not require a claimant to set out in detail facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b-5 are insufficient. Pauling v.

---

1. "At present market quotations, your account with us requires additional margin in the amount of $13,833.00 in order to conform to requirements of the New York Stock Exchange and of this firm.

"We shall appreciate your giving the above matter your prompt consideration.
Very truly yours,
SHEARSON, HAMMILL & CO., INC.
By: Eli Barsoum"

2. See note 3, *infra*, Compl. ¶ 18.

McElroy, 107 U.S.App.D.C. 372, 278 F.2d 252 (1960); Dunn v. Gazzola, 216 F.2d 709 (1st Cir. 1954); see 2A Moore, Federal Practice ¶ 12.08. Rule 9(b), F.R. C.P. provides that "In all averments of fraud * * * the circumstances constituting fraud * * * shall be stated with particularity."

The sufficiency of the complaint in the present case, and the existence of federal jurisdiction, depend upon the underlying factual claims concerning alleged improper representation made to plaintiff, which are found in ¶¶ 17, 18 and 19.[3] These allegations, even when accepted as true and construed liberally and most favorably to the pleader, amount to a claim that Shearson failed to sell out the Shemtobs promptly, as stated in Shearson's May 1 telegram (even though the underlying February 4, 1969, agreement gave Shearson wide discretion in this respect) and that Shearson eventually sold them out without giving them an opportunity to post additional margin, in breach of the alleged May 4, 1970, oral "novation" or modification of the February 4, 1969, written agreement. Thus plaintiffs' claim is nothing more than a garden-variety customer's suit against a broker for breach of contract, which cannot be bootstrapped into an alleged violation of § 10(b) of the Exchange Act, or Rule 10b–5, in the absence of allegation of facts amounting to *scienter*, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. It is insufficient to allege mere negligence, SEC v. Texas Gulf Sulphur, 401 F.2d 833, 867–868 (2d Cir. 1968); Globus v. Law Research Service, Inc., 418 F.2d 1276, 1290–1291 (2d Cir. 1969), breach of contract or breach of a stock exchange rule, Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

In the absence of any allegation of facts amounting to fraud or *scienter*, the claims in ¶¶ 24 and 26 of the complaint that defendant's sell-out of the Shemtobs' account was fraudulent and that the confirmation slips were false, being mere conclusions, are insufficient to save this complaint.

We therefore affirm.

---

3. "17. On or about April 28, 1970, defendant wrote to plaintiffs demanding additional margin of $13,833.00 'in order to conform to requirements of the New York Stock Exchange and of this firm.' The said letter was not received by plaintiffs until on or about May 1, 1970, after the close of the market.

"18. On or about May 1, 1970, after the close of the market, defendant sent plaintiffs a telegram demanding additional margin. The text of the telegram stated:

'At existing market prices it is necessary for us to ask you for $13,850.00 additional margin. Unless this deposit is received in our office by 5/4/70 12:00 noon Mon, we at that time, or as soon as practical thereafter shall sell for your account at the market, sufficient securities to comply with all existing regulations, New York Stock Exchange, or any other exchange. Please give this matter your immediate attention.'

"This telegram was not received by plaintiffs until Saturday, May 2, 1970.

"19. On or about May 4, 1970, plaintiff telephoned defendant and informed it that he fully intended to ride the market down, that defendant should apply the 25% margin required by the regulations of the American Stock Exchange, instead of the 30% required by defendant's house rule, and requested defendant not to sell out plaintiffs' account until they had been given a margin call and opportunity to provide additional collateral. During this conversation defendant represented that the American Stock Exchange's 25% margin requirement would be applied to the account, and that the account would not be sold out without first giving plaintiffs the opportunity to provide additional collateral."