Roger **GREENE** et al., Plaintiffs,

v.

**EMERSONS, LTD.,** et al., **Defendants.**

**KENNETH LEVENTHAL & COMPANY,**
**Defendant and Third-Party Plaintiff,**

v.

**WARREN ADLER, LTD.,** et al.,
**Third-Party Defendants.**

**No. 76 Civ. 2178–CSH.**

United States District Court,
S. D. New York.

Jan. 29, 1980.

See also D.C., 86 F.R.D. 47.

Kass, Goodkind, Wechsler & Labaton, New York City, for plaintiffs; Stuart D. Wechsler, Lawrence Sucharow, New York City, of counsel.

Battle, Fowler, Jaffin, Pierce & Kheel, New York City, for defendants James M. Allen, Ralph W. Emerson, Edward A. Friedman, Robert B. Gabbe and Keith B. Smith; Gerald J. Fields, David Fleischer, New York City, of counsel.

Covington & Burling, Washington, D. C., Hughes, Hubbard & Reed, New York City, for defendant Kenneth Leventhal Co.; David B. Isbell, Theodore Voorhees, Jr., Kathryn P. Broderick, Washington, D. C., Susan L. Thorner, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This putative class action is brought on behalf of all purchasers of the common stock of Emersons Ltd. ("Emersons") between January 1, 1972 and April 7, 1976, inclusive, the date on which the Securities and Exchange Commission suspended trading in Emersons' common stock. Emersons was a Delaware corporation which operated 40 limited menu restaurants in seven eastern states and the District of Columbia. Plaintiffs' claims are presently asserted in a second amended class action complaint. The defendants are Emersons; John P. Radnay and Eli Levi, former officers and "inside directors" of the company; James M. Allen, Ralph W. Emerson, Edward A. Friedman, Keith B. Smith, and Robert G. Gabbe, "outside directors"; Kenneth Leventhal & Co., the company's auditors; and United American Food Processors, Inc., a major supplier to Emersons. The outside directors now move, pursuant to Rule 12(b)(1) and (6), F.R.Civ.P., for judgment in their favor dismissing the complaint for legal insufficiency of the federal claim alleged against them. Plaintiffs and Leventhal (which has filed cross-claims against the outside directors) resist the motion.

For the reasons stated, the outside directors' motion to dismiss the federal claim is granted; the Court declines to retain pendent jurisdiction of the state law claims; and the outside directors are dismissed from this action.

I.

The second amended complaint, in ¶¶ 23–59, alleges a variety of improprieties on the

part of Emersons, Radnay, Levi, United American, and unnamed liquor distributors. These comprised:

(1) A "meat inventory scheme," pursuant to which Emersons' fiscal 1975 pre-tax earnings were fraudulently inflated. ¶¶ 23–24.

(2) Improper capitalization of expenses, which fraudulently inflated Emersons' fiscal 1975 pre-tax earnings. ¶¶ 25–31.

(3) Fraudulent inventory writeups, which inflated Emersons' reported pre-tax earnings in 1974 and 1975. ¶¶ 32–34.

(4) Unrecorded liabilities during the 1974 and 1975 fiscal years, which resulted in understatements of Emersons' accounts payable, and a corresponding overstatement of the company's pre-tax earnings for those years. ¶ 35.

(5) Inaccurate inventory pricing, which had the same general effect. ¶¶ 36–37.

(6) Misstatements in Emersons' quarterly report to the SEC on Form 10–Q for the fiscal quarter ended January 25, 1976, and in a quarterly report to shareholders and a press release, which overstated the company's income. ¶¶ 38–42.

(7) Non-disclosures in Emersons' financial statements for the fiscal years ending in 1974 and 1975, and its interim statements in fiscal year 1976. ¶¶ 43–46.

(8) Unlawful payments and reductions, as the result of arrangements entered into between Emersons, Radnay, Levi, and various beer and liquor manufacturers, distributors, and wholesalers. ¶¶ 47–48.

(9) A misleading news release, prepared on or about February 20, 1976, relating to the distribution of contributions received from certain beer manufacturers in connection with Emersons' marketing procedures. ¶ 49.

(10) Improper use of Emerson' assets by Radnay and Levi, for their own personal expenses and benefit. ¶¶ 50–57.

(11) The issuance by Emersons of misleading financial statements and proxy statements during fiscal years 1972, 1973, 1974, 1975 and the first quarter of 1976. ¶¶ 58–59.

Following this recitation of misdeeds, the complaint alleges, in ¶ 60, as follows:

"As a result of the acts, practices and omissions described above, plaintiffs and the members of the class whom they represent, to their damage and detriment, purchased shares of Emersons at artificially inflated prices based upon erroneous and distorted financial information and reports which financial information and reports failed to fairly and adequately present the financial and operating conditions of Emersons."

The complaint thereupon pleads fourteen separate counts. The first four, against Leventhal, allege securities law violations, and common law negligence and fraud theories. The next seven counts allege securities law and common law theories against Emersons, Radnay, Levi, and United American. Counts XII, XIII and XIV deal with the outside directors. Count XII invokes §§ 10(b) and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78(a) *et seq.*, and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b–5. Count XIII sounds in common law negligence. Count XIV alleges breach of fiduciary duty against the outside directors, as well as Radnay and Levi, the inside directors. The only federal cause of action pleaded against the outside directors is that alleged in Count XII; the other claims are asserted on the basis of pendent jurisdiction.

The legal sufficiency of Count XII, as pleaded in the second amended complaint, thus lies at the heart of the outside directors' motion. That count reads in its entirety:

"109. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 60 and 89 with the same force and effect as if fully set forth herein.

"110. Defendants Emerson, Allen, Friedman, Smith, and Gabbe, were directors of Emersons at all relevant times herein. Defendants aforenamed, by virtue of their acceptance of their respective offices, were fiduciaries of Emersons and

its shareholders, and owed them the duty of faithfully, loyally, diligently, prudently, honestly and carefully conducting the business of Emersons and conserving its assets, and as such fiduciaries were bound to act toward and deal with Emersons with the utmost fidelity, loyalty, care and good faith.

"111. During the years relevant herein, there were no regularly scheduled meetings of the Board of Emersons. The Board of Directors of Emersons met infrequently and its meetings were generally held only when a specific matter required Board attention. The directors of Emersons did not customarily receive nor did they insist upon receiving any agenda prior to the Board meetings nor did they receive or insist upon receiving internal financial information on a regular basis. Board members did not insist upon receiving nor did they receive detailed internal, comparative financial information as to the operations of Emersons. The Board contained no audit committee and its executive committee was numerically dominated by Radnay and Levi and in any event did not meet, nor did the Board insist that it meet. No representative of defendant Leventhal, Emersons' auditing firm, ever attended any Board meeting nor did the directors insist that a member of Leventhal attend any such meeting.

"112. Among the direct and proximate causes of the omissions and misrepresentations alleged above was the gross negligence and reckless disregard of the outside directors of Emersons in the performance of their duties as directors of Emersons.

"113. By reason of the foregoing, the outside directors, together with Emersons, Radnay and Levi, singly and in concert, directly and indirectly by the use of the mails and other means or instrumentalities of interstate commerce, have violated, and/or aided and abetted in violations of Section 10(b) of the Act and Rule 10b–5 promulgated thereunder, in that they (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud or deceit upon plaintiffs and other members of the class.

"114. By reason of the foregoing, plaintiffs and members of the class whom they represent have been damaged."

## II.

The outside directors contend that, accepting *arguendo* all of plaintiffs' factual allegations as true, the complaint fails as a matter of law to state a claim against them under federal securities law. Resolution of the question depends upon the effect of *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and Second Circuit authority both prior and subsequent to that notable case.

*Hochfelder* is significant both for what it decided and what it declined to decide. While the case involved an accountant's asserted liability under § 10(b) and Rule 10(b)–5 to the customers of a brokerage firm the accountant had audited, the principles declared are equally applicable here. *Hochfelder* held that negligent misrepresentations were not sufficient to impose liability under the Rule; the plaintiff must allege and prove "scienter," defined by the Court as "intent to deceive, manipulate, or defraud." 425 U.S. at 193, 96 S.Ct. at 1381. *Hochfelder* left open the question "whether civil liability for aiding and abetting is appropriate under the section and the Rule," and "the elements necessary to establish such a cause of action," 425 U.S. at 192 n. 7, 96 S.Ct. at 1380 n. 7, as well as the question "whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5." *Id.* at 194 n. 12, 96 S.Ct. at 1381 n. 12.

The present plaintiffs recognize that, on the authority of *Hochfelder* and *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973), "mere negligence is insufficient" to sustain

a § 10(b) violation. (Brief at p. 4). They contend, however, that under those Second Circuit cases which address the questions left undecided by the Supreme Court in *Hochfelder*, and thus far still undetermined by that tribunal, their complaint alleges the requisite level of scienter to sustain the cause of action.

We turn, then, to the Second Circuit authority. In *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971), which antedated *Hochfelder* by five years, the Second Circuit dismissed plaintiffs' complaint against the brokerage firm with which they had an account. Judge Mansfield wrote for the Court:

"Thus plaintiffs' claim is nothing more than a garden-variety customer's suit against a broker for breach of contract, which cannot be bootstrapped into an alleged violation of § 10(b) of the Exchange Act, or Rule 10b–5, in the absence of allegation of facts amounting to *scienter*, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. It is insufficient to allege mere negligence, *SEC v. Texas Gulf Sulphur*, 401 F.2d 833, 867–868 (2d Cir. 1968); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1290–1291 (2d Cir. 1969), breach of contract or breach of a stock exchange rule, *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966)." 448 F.2d at 445.

Implicit in this discussion is the view that "reckless disregard for the truth," if properly pleaded, would be sufficient to sustain a claim against a broker under § 10(b). The Second Circuit has expanded further on the concept of reckless disregard, within the § 10(b) context, in *Cohen v. Franchard Corp.*, 478 F.2d 115 (2d Cir. 1973), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973); *Lanza v. Drexel & Co.*, supra; *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38 (2d Cir. 1978), cert. denied, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), and *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478 (2d Cir. 1979). See also *Steinberg v. Carey*, 439 F.Supp. 1233 (S.D.N.Y.1977), *per* Judge Weinfeld.

■ These cases establish that, in appropriate circumstances, recklessness satisfies the scienter requirement. The Second Circuit has also held that "the knowing assistance of or participation in a fraudulent scheme gives rise to liability under § 10(b) as an aider and abettor." *Hirsch v. duPont*, 553 F.2d 750, 759 (2d Cir. 1977). At least where the alleged aider and abettor owes a fiduciary duty to the defrauded party, recklessness does indeed satisfy the requirement of scienter. *Rolf, supra*, at 570 F.2d 38. However, the *Rolf* court, in turn, left open the question whether "recklessness satisfies the scienter requirement where the alleged aider and abettor owes no duty of disclosure and of loyalty to the defrauded party." *Id.* at 44 n. 9.

That undecided question is of potential significance to the case at bar, since the Second Circuit held in *Lanza, supra*, that outside directors owe no fiduciary duty to purchasers of stock, at least with respect to negotiations in which the outside directors do not participate, and have no knowledge of the false representations by which the transaction is tainted. The *Lanza* court, affirming a judgment in favor of outside directors, concluded that an outside director in those circumstances "owes no duty to insure that all material, adverse information is conveyed to prospective purchasers of the stock of the corporation on those board he sits."

In the case at bar, however, I need not decide the question left open in *Rolf*, namely, whether "recklessness satisfies the scienter requirement where the alleged aider and abettor owes no duty of disclosure" to the plaintiffs. That is because, assuming that the question should be answered in the affirmative, the complaint simply does not allege facts which constitute recklessness.

■ The operative facts underlying plaintiffs' § 10(b) claim are set forth in ¶ 111 of the complaint, quoted *ante*. In essence, the outside directors are charged

with inaction. Plaintiffs allege that there were no regular scheduled meetings of the board; that the board met infrequently; that the directors neither received nor insisted upon receiving any agenda prior to the meetings; that they neither received nor insisted upon receiving internal financial information on a regular basis; that the board contained no audit committee; that its executive committee was numerically dominated by Radnay and Levi, and in any event did not meet, nor did the board insist that it meet; and that no representative of Leventhal, the auditing firm, ever attended a board meeting, nor did the directors insist upon such attendance. The allegations are those of nonfeasance, not misfeasance or malfeasance. Nor is there any allegation whatsoever that any outside director had knowledge of improprieties of others, which should have spurred them into action. Indeed, there is not even an allegation that the outside directors knew "or should have known" of such improprieties. Nor may that omission be ascribed to able counsel's unfamiliarity with the phrase; ¶ 66 of the complaint, asserting a § 10(b) violation against Leventhal, the accountants, alleges that Leventhal "knew or should have known that its opinions on the financial statements of Emersons were materially false and misleading."

The Second Circuit has had a number of occasions to define the concept of "reckless disregard for the truth." In *Lanza, supra,* Judge Moore wrote for the Court:

"In determining was [sic] constitutes 'willful or reckless disregard for the truth' the inquiry normally will be to determine whether the defendants knew the material facts misstated or omitted, or failed or refused, after being put on notice of a possible material failure of disclosure, to apprise themselves of the facts where they could have done so without any extraordinary effort. *Chris Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 363–364, 396–399 (2d Cir. 1973). The answer to the inquiry will of course depend upon the circumstances of the particular case, including the nature and duties of the corporate positions held by the defendants." 479 F.2d at 1306 n. 98.

The *Lanza* definition was quoted in *Steinberg v. Carey,* 439 F.Supp. 1233, 1239 (S.D. N.Y.1977), Judge Weinfeld observing that "a substantially similar formulation" was applied in *Cohen v. Franchard Corp.,* 478 F.2d 115, 123 (2d Cir. 1973), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973). The *Cohen* court said:

"The standard for determining liability under Rule 10b–5 essentially is whether plaintiff has established that defendant either knew the material facts that were misstated or omitted and should have realized their significance, or failed or refused to ascertain and disclose such facts when they were readily available to him and he had reasonable grounds to believe that they existed . . . It is not enough for plaintiff to show that defendant failed to detect certain material facts when he had no reason to suspect their existence."

As Judge Weinfeld pointed out in *Steinberg,* 439 F.Supp. at 1239 n. 19, "Other recklessness standards, apparently more stringent," have also been applied in the Circuit. Thus in *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 378 F.Supp. 112, 126 (S.D.N.Y.1974), *aff'd,* 540 F.2d 27 (2d Cir. 1976), the district court spoke of "willful, deliberate or reckless disregard for truth that is the equivalent of knowledge." In *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 868 (2d Cir. 1968), *cert. denied sub nom. Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), Judge Friendly, concurring, defined the concept as "the kind of recklessness that is equivalent to willful fraud." The *Rolf* court said:

"Reckless conduct is, at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' *Sanders v. John Nuveen & Co.,* 554 F.2d 790, 793 (7th Cir. 1977)." 570 F.2d at 47.

In *Edwards & Hanly, supra,* the Second Circuit's most recent pronouncement on the issue, the Court expanded upon the holding in *Rolf,* which dealt with the § 10(b) liability of an individual defendant who supervised the fraudulent practices of the plaintiff's account executive. At 602 F.2d 483 n. 5, the *Edwards & Hanly* court said:

"The District Court applied the three-prong test for aider-abettor liability adopted in *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47–48 (2d Cir.), cert. denied, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), and *SEC v. Coffey,* 493 F.2d 1304, 1316 (6th Cir. 1974), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). This test requires proof of (1) fraud by the primary violator (Richardson); (2) knowledge of the primary fraud by the alleged aider-abettor; and (3) substantial assistance. See also Restatement (Second) of Torts § 876."

■ *Edwards & Hanly* involved an action against a clearing agent. The district court recognized, properly in the view of the Court of Appeals, that a clearing agent was generally under no fiduciary duty to the owners of securities that pass through its hands. The district court decided, nevertheless, to evaluate scienter under a "recklessness standard," applying that standard to the acts of one Werba, an employee of the corporate clearing agent. That decision prompted the following discussion by the Court of Appeals, in an opinion by Judge Gurfein:

"We have not used the 'recklessness' standard when money damages are claimed, in an aiding and abetting context, except on the basis of a breach of fiduciary duty. In *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38 (2d Cir.), cert. denied, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), we held that 'recklessness' may be an appropriate standard for *scienter* when there is a fiduciary duty, but we have gone no further. To the extent that Werba is held culpable because he 'recklessly' *failed to discover* whether Richardson was telling its brokers that it was short selling, he did not achieve the status of an aider-abettor.

'The *scienter* requirement scales upward when activity is more remote; therefore, the assistance rendered should be both substantial and knowing.' *Woodward v. Metro Bank of Dallas,* supra, [5th Cir.] 522 F.2d [84] at 95.

"By way of illustration, if a bank lends money to a customer who then uses it to perpetrate a fraudulent scheme, there is probably neither intent nor causation on which to find the Bank liable for a 10b–5 violation. On the other hand, for example, if the bank encourages a borrower to sell notes to others without disclosing that they are subordinate to the Bank's own loan, it may become an aider-abettor. *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793 (3d Cir.), cert. denied, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

"Finding a person liable *for aiding and abetting* a violation of 10b–5, as distinct from committing the violation as a principal, requires something closer to an actual intent to aid in a fraud, at least in the absence of some special relationship with the plaintiff that is fiduciary in nature. Our difficulty is that the judge concluded that 'Werba knew that Richardson was defrauding broker-dealers by failing to disclose its short position *or, at least, recklessly failed to discover Richardson's fraud.*' 458 F.Supp. at 1123. (Emphasis in original.)

"This falls short of a finding of fact that Werba *actually knew* that Richardson was not disclosing its short position." *Id.* at 484–5.

The case thereafter turned upon plaintiff's failure to exercise due diligence, an alternative basis for rejecting its claim. However, it is clear from the Second Circuit's discussion in *Edwards & Hanly* that a "reckless failure to discover" the primary violator's transgressions would be insufficient to demonstrate scienter in respect of a party owing no direct fiduciary duty to the injured plaintiff.

*Edwards & Hanly,* when read in conjunction with *Lanza* and the other Second Cir-

cuit authorities cited *supra*, is fatal to plaintiffs' claims as pleaded against the outside directors. There is no allegation that any outside director participated in the improprieties of the officers, knew anything of those improprieties, or indeed should have known of them. The pleading is deficient as a matter of law. In view of the limited responsibilities the outside directors bore to purchasers such as plaintiffs, as defined in *Lanza*, it was necessary for plaintiffs to allege something more than the outside directors' failure to discover those improprieties, even if such failure might be characterized as "reckless." The law, in such circumstances, "requires something closer to an actual intent to aid in a fraud." *Edwards & Hanly, supra.*

■ Plaintiffs and Leventhal contend that the additional allegations in ¶¶ 112 and 113 of the complaint supplement the factual allegations of ¶ 111, and in concert elevate the pleading to the requisite allegation of scienter. They also contend that plaintiffs are entitled to full discovery of the outside directors, before a dispositive motion should be entertained; in that regard, they point out that some of the cases cited *supra* were decided on summary judgment after discovery, or after trial. However, the Court of Appeals' decision in *Shemtob, supra*, furnishes the answers to these contentions. A defendant has the right, under Rule 12(b), F.R.Civ.P., to challenge the legal sufficiency of the complaint's allegations against him, without first subjecting himself to discovery procedures. In *Shemtob* the Court of Appeals affirmed dismissal of the complaint, in response to a motion pursuant to Rule 12(b)(6), for precisely the same reason that we do here: the absence of allegations of facts amounting to scienter.[1] The additional allegations found in the present complaint at ¶¶ 112 and 113 are purely conclusory, and avail the plaintiffs nothing. As the Court of Appeals observed in *Shemtob*, at 445:

"In the absence of any allegation of facts amounting to fraud or *scienter*, the claims in ¶¶ 24 and 26 of the complaint that defendant's sell-out of the Shemtobs' account was fraudulent and that the confirmation slips were false, being mere conclusions, are insufficient to save this complaint."

Count XII of the second amended complaint, charging the outside directors with violations of § 10(b) and Rule 10b–5, will be dismissed for failure to state a claim upon which relief may be granted.

### III.

■ Plaintiffs argue that, even if the complaint should not state a federal claim against the outside directors, the state law claims embraced by Counts XIII and XIV should be retained by the Court pursuant to the doctrine of pendent party jurisdiction. In the circumstances of this case, I decline to retain jurisdiction over the state law claims against the outside directors. The case is at an early stage in respect of development of the merits; discovery has to date been limited to the question of whether a class should be certified. Dismissal of a federal claim well before trial militates in favor of dismissal of the state claims as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Plaintiffs rely upon the Supreme Court's more recent pronouncement in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), but that case in fact affirmed the lower court's dismissal of the state claim, and in doing so offered this discussion:

"From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite an-

---

1. It should be noted that plaintiffs' counsel have available to them detailed reports of Special Counsel and Special Auditors, prepared in connection with an SEC investigation and con-

sent decree (the "Vincent Report"). This is not a case where plaintiffs are entirely ignorant of transactions which might support allegations of fraud.

other thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.' *Ibid.* True, the same considerations of judicial economy would be served insofar as plaintiff's claims 'are such that he would ordinarily be expected to try them all in one judicial proceeding . . . .' *Ibid.* But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." 427 U.S. at 14–15, 96 S.Ct. at 2420.

That discussion is apposite to the case at bar, since the outside directors, as to whom no federal claim exists, are entirely different defendants from those against whom securities law violations are sufficiently pleaded.

I also conclude that the outside directors would be unfairly prejudiced by resolution of the plaintiffs' local law claims against them within the context of claims of federal securities law violations against other parties. Although the claims against all defendants arise out of the same general factual background, the federal and state claims are sufficiently different in legal theory to give rise to the risks of confusion or spill-over effect in the minds of the jury (plaintiffs have demanded a jury in this case). There is substantial authority, in the circumstances, for a refusal by the trial court to exercise pendent party jurisdiction. *Houlihan v. Anderson-Stokes, Inc.*, 434 F.Supp. 1324, 1328–1330 (D.D.C.1977); *Osterneck v. E.T. Barwick Industries, Inc.*, 79 F.R.D. 47, 54 (N.D.Ga.1978); *Faim Information Services, Inc. v. Borchert*, CCH 1973 Transfer Binder, Fed.Sec.L.Rep. ¶ 94,137 (S.D.N.Y.1973).

In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Court held that in a "short-form merger" case under a Delaware statute, neither § 10(b) nor Rule 10b–5 covered alleged breaches of fiduciary duty by a majority against minority shareholders, in the absence of any charge of misrepresentation or lack of disclosure. The Court reasoned that neither the statute nor the Rule was intended "to prohibit any conduct not involving manipulation or deception." In consequence, "the claim of fraud and fiduciary breach in this complaint states a cause of action under any part of Rule 10b–5 only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." 430 U.S. at 473–474, 97 S.Ct. at 1301. A more expanded reading of § 10(b) and Rule 10b–5, the Court observed, "would be to bring within the Rule a wide variety of corporate conduct traditionally left to state regulation . . . Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden." *Id.* at 478–579, 97 S.Ct. at 1304. This rationale, while reenforcing the conclusion reached under point II, *ante*, that the present plaintiffs do not allege a Rule 10b–5 violation against the outside directors, also indicates the wisdom of remanding the state claims against those defendants, at this early stage of the litigation, to the state courts.

### CONCLUSION

It follows that the motion of the outside directors is granted, and the second amended complaint as to them will be dismissed. The dismissal in respect of Count XII will be with prejudice, and the dismissal in respect of Counts XIII and XIV will be without prejudice.

An appellate determination of the correctness of these rulings would appear appropriate at this stage of the litigation. Accordingly this Court's decision will be

certified for immediate appeal under Rule 54(b), F.R.Civ.P.

No just reason for delay appearing, the Clerk of the Court is hereby directed, pursuant to Rule 54(b), F.R.Civ.P., to enter judgment in favor of defendants James M. Allen, Ralph W. Emerson, Edward A. Friedman, Robert B. Gabbe, and Keith B. Smith and against plaintiffs dismissing Count XII of the second amended complaint with prejudice and dismissing Counts XIII and XIV against said defendants without prejudice.

It is So Ordered.