SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

The SEABOARD CORPORATION, etc.,
et al., Defendants.

ADMIRALTY FUND; the Admiralty Fund Growth Series Litigation Trust and the Admiralty Fund Insurance Series Litigation Trust; the Income Fund of Boston, Inc.; the Income Fund of Boston, Inc. Litigation Trust; Seaboard Leverage Fund, Inc.; the Seaboard Leverage Fund Litigation Trust, Cross-Claimants/Appellants,

v.

CITY NATIONAL BANK,
Cross-Defendant/Appellee.

No. 79–3822.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1981.

Decided May 24, 1982.

Stephen H. Marcus, Greenberg, Bernhard, Weiss & Karma, Los Angeles, Cal., for cross-claimants/appellants.

Barbara Faye Stein, Beverly Hills, Cal., argued, for cross-defendant/appellee; Barbara Faye Stein, and Neil G. McCarroll II, Beverly Hills, Cal., on brief.

Before WRIGHT and WALLACE, Circuit Judges, and EAST,* Senior District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Admiralty Fund alleged in Count 8 of its second amended cross-claims that John Rawlings and Jerome Randolph defrauded the Funds through a series of purchases of HMO International, Inc. stock and resales to Admiralty Fund. The transfers were effected through Rawlings' agency account at City National Bank (hereinafter CNB).

The district court dismissed the action with prejudice under Fed.R.Civ.P. 12(b)(6). The issue is whether dismissal without leave to amend was proper. We affirm.

FACTUAL BACKGROUND

Reference to CNB first appears in the SEC complaint filed against Seaboard and others. The complaint described a "joint venture" between Jerome Randolph and John Rawlings to sell HMO, a "thinly traded" over-the-counter stock, to Admiralty

* Of the District of Oregon.

Fund and Leverage Fund (hereinafter Funds). The transactions were effected through an agency account Rawlings maintained at CNB.

Randolph arranged with broker P. N. MacIntyre & Co. for the Funds to buy a block of 50,000 HMO shares at discount. Concurrently, Rawlings purchased through the CNB account 3,000 shares, also at discount. Randolph then instructed Rawlings to sell through the account at the market price. The shares were bought by Admiralty Fund.

This arrangement of buying at discount and then reselling to Admiralty Fund was repeated several times. Further sales were made to Leverage Fund at inflated prices. All occurred through the CNB agency account.

The Funds eventually owned 80,000 shares, later sold at a loss of $524,000. Randolph and Rawlings allegedly earned from their activities more than $280,000.

CNB was not named as a defendant in the SEC complaint, but was added as a cross-defendant in the Funds' cross-claims filed March 11, 1974.

The second amended cross-claims basically alleged the transactions that were the subject matter of the SEC complaint. Regarding CNB, the funds referred only to the fact that the transactions had been effected through Rawlings' agency account. On this basis, CNB was named as a cross-defendant in Count 8 of the cross-claims, and was accused of engaging in a conspiracy to defraud the Funds and of aiding and abetting violations of the securities laws.

CNB moved to dismiss under Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8(a)(2). The Funds did not amend the cross-claims or file a motion for leave to amend. In a memorandum in response to CNB's motion, the Funds simply acknowledged that its claims against CNB were based upon coconspirator and aider and abettor theories. It argued that sufficient acts of misrepresentation were alleged to make out a cause of action against it.

In a memorandum opinion responsive to the motions directed at the second amended cross-claims, the district court found that the cross-claim "contain[ed] no allegations whatsoever concerning any alleged conduct of CNB." There were no allegations of "specific wrongdoing, misconduct, or failure to act" on CNB's part. Its only relationship to the litigation was that it held an agency account for Rawlings, one of the principal defendants.

The court rejected the Funds' argument that its allegations of conspirator and aider and abettor liability were sufficient: "Bold allegations of status do not . . . state claims for relief." From these allegations no reasonable inference could be drawn that CNB was connected with the fraud. It held that Count 8 failed to state a claim against CNB upon which relief could be granted, and it dismissed the cross-claim with prejudice.

We agree with the court's analysis and affirm its judgment.

DISCUSSION

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Where fraud or mistake is averred, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R. Civ.P. 9(b). Otherwise, the pleading may be subject to a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

■ Generally, a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). We must reverse the judgment unless we are able to find beyond doubt that the Funds cannot cure the defect by amendment.

■ Count 8 failed to state a cause of action because it alleged only that Rawlings held the agency account at CNB. It failed to allege any facts demonstrating knowledge and participation sufficient to impose liability on the bank. Under similar circumstances, when a complaint failed to al-

lege the required scienter, it was properly dismissed with prejudice. *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971); *Greene v. Emersons, Ltd.*, 86 F.R.D. 66 (S.D.N.Y.1980).

Although discovery had not taken place when this motion was granted, CNB "has the right under Rule 12(b), Fed.R.Civ.P., to challenge the legal sufficiency of the complaint's allegations against [it], without first subjecting [it]self to discovery procedures." 86 F.R.D. at 73 (citing *Shemtob v. Shearson, supra*).

■ Though it is generally true that what amounts to summary judgment should not be granted until the opposing party has been afforded discovery, *see* C. Wright & A. Miller, *Federal Practice and Procedure* § 2730 at 583, our review of the record tells us that discovery would be fruitless and that it therefore would be impossible for Admiralty Fund to cure the defect in its cross-claim by amendment. The judgment was proper and is affirmed.