804 F.2d 1047
 55 USLW 2300, Fed. Sec. L. Rep. P 92,982,
RICO Bus.Disp.Guide 6433
 Patrick J. FORKIN, Appellant,
v.
ROONEY PACE, INC., a Nevada Corporation; Artel
Communications Corporation, a Massachusetts
Corporation; Bear Stearns & Company,
Inc., a New York Corporation;
David Morse, Appellees.
Jack A. YEAGER, Appellant,
v.
ROONEY PACE, INC.; Artel Communications Corporation; Bear
Stearns & Company, Inc.; and David Morse, Appellees.
 Nos. 86-1258, 86-1416.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 11, 1986.
Decided Nov. 4, 1986.
 
 H. Clay Billingsley, St. Louis, Mo., for appellant.
 James E. Beckley, Chicago, Ill., for Rooney Pace.
 Thomas C. Walsh, St. Louis, Mo., for Artel Communications.
 Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 This appeal raises the issue whether a broker-dealer's unauthorized rescission of a securities transaction is actionable under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The district court held that neither section 10(b) nor Rule 10b-5 will support such an action. For the reasons set forth below, we affirm.
 
 
 2
 I. BACKGROUND.
 
 
 3
 This appeal concerns separate actions by Patrick J. Forkin and Jack E. Yeager (hereinafter collectively referred to as appellants) against Rooney Pace, Inc. (Rooney Pace), Artel Communications Corporation (Artel), Bear Stearns & Company (Bear Stearns), and David Morse (hereinafter collectively referred to as appellees). The appellants' complaints are identical in all material respects and will be jointly reviewed. Because appellants' actions were dismissed pursuant to motions under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for the purposes of this appeal, we must accept the factual allegations of their complaints as true and construe them in the light most favorable to the appellants. See Tanner v. Presidents-First Lady Spa, Inc., 345 F.Supp. 950, 952 (E.D.Mo.1972); Securities and Exchange Commission v. Tiffany Industries, Inc., 535 F.Supp. 1160, 1164 (E.D.Mo.1982).
 
 
 4
 The complaints allege that Rooney Pace underwrote an offering of securities by Artel and registered the offering as required by federal law. In connection with the offering, Artel allocated a portion of shares to be issued to its board of directors and management. One of Artel's directors contacted the appellants concerning the offering and, upon receiving indications of interest, directed Morse, an employee of Rooney Pace, to set aside 7,000 of his allocated shares, 2,000 for purchase by Forkin and 5,000 shares for purchase by Yeager. Both Forkin and Yeager received preliminary prospectuses from Morse and Rooney Pace and, after reading the prospectuses, informed the Artel director they would purchase the shares previously set aside for them. The director obtained information necessary to consumate the sale and forwarded it to Rooney Pace. The appellants received confirmation of the purchases reflecting a sale date of June 2, 1983, and a purchase price of six dollars per share. The appellants then wire transferred the full amounts owed for the shares to Rooney Pace. On June 3, 1983, Yeager contacted Morse and obtained an oral confirmation of the sale. Forkin received a similar confirmation on June 6, 1983.
 
 
 5
 On June 6, 1983, Forkin decided to realize his gains from the transaction and directed Morse to sell his 2,000 shares at the prevailing market price. Forkin later orally confirmed the sale with a Rooney Pace official and received a written confirmation from Bear Stearns. Similarly, on June 7, 1983, Yeager directed Morse to sell his 5,000 shares at the prevailing market price. Both Forkin and Yeager expected a tidy profit from the sale because the shares had more than doubled from the time of the original purchases to the time of the sales orders. The appellants' dreams of gold turned to lead, however, when later in the day on June 7, Morse contacted Forkin and Yeager and informed them that the transactions would be rescinded because the sales of the shares were contrary to Illinois law. As it turns out, both Forkin and Yeager were residents of Illinois at the time of the sales and confirmations. The securities forming the basis of the transactions, however, were not registered for sale in Illinois as required by the Illinois Securities Act. Forkin and Yeager later received written confirmations of the rescissions and a return of the original purchase price of the shares.
 
 
 6
 Forkin and Yeager then brought separate actions in federal district court seeking to recover the difference between the original purchase price and the market price of the shares at the time of the attempted sales. The appellants' complaints alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. Sec. 240.10b-5, as well as the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68. The complaints also raise five related state law counts. Both complaints were dismissed, pursuant to motions under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a cause of action under either of the anti-fraud provisions of the federal securities law or RICO. In addition, the court declined to exercise pendent jurisdiction and dismissed the state claims without prejudice to whatever action the appellants may bring in state court. Forkin and Yeager appeal the dismissal.
 
 
 7
 II. THE SECTION 10(b) AND RULE 10b-5 CLAIM.
 
 
 8
 Forkin and Yeager argue that the district courts erred in failing to find that the rescission of the stock transactions constituted a violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.[1] In order to establish a private cause of action under section 10(b), a plaintiff must establish that the defendant employed a device, scheme or artifice to defraud, engaged in acts, practices or a course of business that operates as a fraud or deceit, or made misrepresentations or omissions of material fact. 17 C.F.R. Sec. 240.10b-5; Harris v. Union Electric Co., 787 F.2d 355, 362 (8th Cir.1986). In addition, the plaintiff must show that the activity occurred in connection with the purchase or sale of a security and that any injury was caused by the fraudulent activity. Finally, the plaintiff must show scienter, that is, an intent to deceive, manipulate, or defraud. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Because the appellants' complaints fail to sufficiently allege the fraud, manipulation, or deceit necessary to state a claim under section 10(b) or Rule 10b-5, they were properly dismissed.
 
 
 9
 The appellants allege they were defrauded by the appellees' failure to disclose that the Artel securities were not registered for sale in Illinois, resulting in the rescission of the transaction. The appellees' behavior, however, simply does not amount to fraud as defined in section 10(b) or Rule 10b-5. We do not understand appellants' complaints to state that, at the time of the purchases, Rooney Pace intended to defraud them by representing that the shares were registered for sale in Illinois with the intention of rescinding the transaction if the shares later increased in value. The appellants' claim, as we understand it, is that they were defrauded by the unilateral rescission of the transaction. The rescission, however, does not violate section 10(b) or Rule 10b-5 because it did not involve any fraud or deception as these terms are used in the anti-fraud provisions of the federal securities laws. See Rostein v. Reynolds, 359 F.Supp. 109 (N.D.Ill.1973) (sale of unregistered security not fraudulent or deceptive in violation of section 10(b) or rule 10b-5); Shemtob v. Shearson, Hammil & Co., 448 F.2d 442 (2d Cir.1971) (failure to promptly liquidate a margin account not a fraud or deception); Kravetz v. Brukenfeld, 591 F.Supp. 1383 (S.D.N.Y.1984) (failure to liquidate securities account not fraud or deception). The rescission simply is not manipulative or deceptive. The appellants were accurately informed about the status of the transaction at all relevant times. Thus, the rescission does not amount to conduct that could serve as the foundation for a section 10(b) or rule 10b-5 cause of action.
 
 
 10
 Forkin and Yeager also allege the appellees violated section 10(b) and Rule 10b-5 by breaching the representation of fair dealing implied in every broker-investor relationship. Yet, whatever representations may be implicated in the broker-investor relationship, failure to live up to those representations does not automatically give rise to an action under the anti-fraud provisions of the securities laws. "Section 10(b) and Rule 10b-5 were not intended to bring within their ambit simple corporate mismanagement or every imaginable breach of fiduciary duty in connection with a securities transaction. The gravamen of a Sec. 10(b) and Rule 10b-5 cause of action is fraud, viz. manipulation or deception." St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1048 (8th Cir.1977), citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 214, 96 S.Ct. 1375, 1391 47 L.Ed.2d 668 (1976); Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 471, 97 S.Ct. 1292, 1299, 51 L.Ed.2d 480 (1977). The reasoning behind limiting section 10(b) and Rule 10b-5 to instances of actual fraud is clear. If they were not so limited, every instance of broker misconduct would give rise to a cause of action under the anti-fraud provisions of the federal securities laws. Indeed, violation of any law by anyone connected with a securities transaction would give rise to a section 10(b) cause of action. See Shemtob, 448 F.2d at 445 (breach of contract claim cannot be bootstrapped into a violation of section 10(b) or Rule 10b-5). We do not believe Congress intended such a result in setting up the remedial schemes of the securities laws. As has been said in a different context:
 
 
 11
 [P]laintiff's position is tantamount to asserting not only that every violation of the securities laws gives rise to a private right of action, whether that right is expressly authorized by the statute or not, but also that every violation of the securities laws is actionable under the antifraud provisions of the '34 Act. Such a theory is supported neither by the statute or its rule nor by the cases interpreting them.
 
 
 12
 Rotstein v. Reynolds & Co., 359 F.Supp. 109, 112 (N.D.Ill.1973).
 
 
 13
 Thus, since the appellants' complaints fail to sufficiently allege fraud or deception in connection with the purchase or sale of securities, we affirm the district court's dismissal of the section 10(b) and Rule 10b-5 counts for failure to state a claim on which relief could be granted.
 
 
 14
 Our holdings with respect to the appellants' section 10(b) and Rule 10b-5 cause of action should not, however, be understood as exonerating the appellees from all liability arising out of the transaction. Indeed, the equities in this case weigh heavily in favor of the appellants. We note that rescission of the transaction because the securities were not registered allows the appellees to speculate on the appellants' investment and divert any increase in the price of the shares to themselves or others who have not contributed to the investment. Thus, there is a strong argument in favor of allowing the appellants to force consumation of the transaction. Cf. Securities Exchange Act of 1934, Sec. 29(b), 15 U.S.C. Sec. 78cc(b), (stating that contracts in violation of the Exchange Act shall be void as to persons who have violated the Act or who, in performance of the contract, must violate the Act in order to perform); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386-88, 90 S.Ct. 616, 622-23, 24 L.Ed.2d 593 (1970) (interpreting section 29(b) as rendering contracts in violation of the Exchange Act voidable at the option of the innocent party); Reserve Life Insurance Co. v. Provident Life Insurance Co., 499 F.2d 715, 726 (8th Cir.1974) (finding contract in violation of Exchange Act voidable at the option of the innocent party); Greater Iowa Corp. v. McLendon, 378 F.2d 783, 792 (8th Cir.1967) (same). On the other hand, awarding the appellants lost profits is tantamount to enforcing a contract in violation of the established policy of Illinois that every security sold in the state be registered for sale in that state. Cf. Kaiser-Frazer Corp. v. Otis & Co., 195 F.2d 838, 843-44 (2d Cir.1952) (finding contract to sell securities in violation of registration requirements of Securities Act of 1933 not enforceable). Absent a federal cause of action, this Court should be reluctant to resolve such important state policy issues under the guise of a claim under section 10(b) and rule 10b-5. Cf. Gannett, Inc. v. Register Pub. Co., 428 F.Supp. 818, 830-31 (D.Conn.1977) (noting differences among states as to enforceability of contracts in violation of state blue sky laws). Thus, our affirmance of the dismissal of appellants' federal claims is without prejudice to any action the appellants may bring in state court in order to determine whether, in addition to serving as a shield allowing innocent purchasers to avoid contracts for sale of unregistered securities, the Illinois blue sky laws may also be used as a sword by the seller of unregistered securities allowing unilateral rescission and retention of any profits from the transaction.
 
 
 15
 III. RICO CLAIMS.
 
 
 16
 The appellants' complaints also raise claims under RICO, 18 U.S.C. Secs. 1961-68. The district court summarily dismissed the RICO claims holding that dismissal of the securities fraud claims required dismissal of the RICO claims for failure to sufficiently allege predicate acts. We agree.
 
 
 17
 Forkin and Yeager allege that the appellees violated the substantive provisions of RICO by conducting or participating in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. Sec. 1962(c). At a minimum, violation of section 1962(c) requires the defendant to engage in some racketeering activity, as defined in 18 U.S.C. Sec. 1961(1). As the basis of racketeering activity, Forkin and Yeager allege securities fraud, wire fraud, and mail fraud. Yet, we have upheld the dismissal of appellants' securities fraud claims on the basis that appellees' conduct, in connection with the transaction, did not amount to a fraud. Thus, our finding with respect to the federal securities law claims renders the RICO claims insufficient as a matter of law because the appellants' allegations of racketeering activity are predicated on the same conduct as the securities fraud claims. We, therefore, affirm the dismissal of appellants' RICO claims for failure to state a cause of action.
 
 
 18
 IV. CONCLUSION.
 
 
 19
 Reduced to its essentials, the appellants' grievance is that the appellees have breached contracts for the purchase and sale of securities and have diverted profits from those contracts to their own use. Whatever the merits of the grievance, appellants' allegations do not amount to a violation of the anti-fraud provisions of the federal securities laws. Thus, we affirm the dismissal of appellants' complaints in their entirety without prejudice to appellants' rights to pursue state court remedies.
 
 
 
 [1]
 Section 10(b) of the 1934 Act provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
 * * *
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 15 U.S.C. Sec. 78j(b) (1976).
 Rule 10b-5 provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 
 
 [17]
 C.F.R. Sec. 240.10b-5 (1982)